IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MESCALERO APACHE TRIBE, and INN OF THE MOUNTAIN GODS RESORT & CASINO, an unincorporated business entity of the Mescalero Apache Tribe,<br><br>      Plaintiffs,<br><br>v.<br><br>THE PRINCETON EXCESS SURPLUS LINES INSURANCE COMPANY<br><br>      Defendant. | No. 2:25-cv-854 |

## PLAINTIFFS' ORIGINAL COMPLAINT

### I. NATURE OF ACTION

1. Plaintiffs Mescalero Apache Tribe ("Tribe") and Inn of the Mountain Gods Resort & Casino (the "Inn"), an unincorporated business entity of the Mescalero Apache Tribe, (collectively, "Plaintiffs") bring this action against Defendant The Princeton Excess and Surplus Lines Insurance Company ("Defendant") and, in support thereof, show the Court as follows:

### II. THE PARTIES

2. Mescalero Apache Tribe is a tribal governmental entity who operates in Otero County, New Mexico.

3. Inn of the Mountain Gods Resort & Casino is an unincorporated business entity owned and operated by the Mescalero Apache Tribe operating in Otero County, New Mexico.

4. Defendant is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 555 College Road East Princeton, NJ 08543. Defendant provides services within the State of New Mexico and provides

insurance on a surplus lines basis in New Mexico as a foreign corporation. Pursuant to New Mexico Insurance Code § 59A-5-31, Defendant may be served with process through the Office of the New Mexico Superintendent of Insurance at P.O. Box 1689, Santa Fe, New Mexico 87504-1689.

## III. JURISDICTION AND VENUE

5. The court has subject matter jurisdiction under 28 U.S.C. § 1332.

6. There is complete diversity of citizenship as to all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

7. The claims at issue in this action arose in the District of New Mexico (and specifically in Otero County) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in Otero County, New Mexico. Venue is, therefore, proper in this Court under 28 U.S. C. § 1391.

8. Defendant maintains sufficient minimum contacts with the State such that this Court's exercise of jurisdiction over it is not contrary to the provisions of the Constitution or laws of the United States, and this Court therefore has jurisdiction pursuant to NMSA 1978, § 38-1-16(a) because the causes of action arise from Defendant's transaction of business within this State and commissions of tortious acts within this State.

## IV. FACTUAL BACKGROUND

**A.     Plaintiffs' Business and the Property Area**

9. The Inn of the Mountain Gods Resort & Casino is located on the Mescalero Apache reservation in Mescalero, New Mexico, where it advertises the charm and comforts of an upscale golf and spa resort with one of the top casinos in New Mexico.

10.     The Inn and its subsidiaries, including the Travel Center, an unincorporated enterprise of the Tribe, was established in 2003 by the Tribe and manages and owns all resort, hotel and gaming enterprises of the Tribe including the Inn, a gaming, hotel and resort complex.

**B.     The Policy**

11.     On or about June 30, 2023, Plaintiffs purchased a property insurance policy, Policy No. TPIP2023(Dec16)9194 from Defendant, with an effective date of July 1, 2023 through July 1, 2024 (the "**Policy**"). Plaintiffs Mescalero, the Travel Center, and the Inn are all listed as Named Insureds.

12.     The Policy's limit of coverage for all Perils, Coverages, and Named Insureds is $600,000,000 per Occurrence subject to certain occurrence and/or aggregate sub-limits (with various insurers providing coverage throughout the tower). The limits provided by Defendant include 100% of the first $20,000,000.00 of the insurance tower for all risk property coverage.

13.     The Policy provides coverage for Business Interruption, Extra Expense & Rental Income (and also provides additional coverage for tuition income and tax revenue interruption losses). The relevant sub-limits for these coverages are as follows:

| | | |
|---|---|---|
| C. | USD161,613,250 | Combined Business Interruption, Rental Income and Tuition Income (and related fees). However, if specific values for such coverage have not been reported as part of the Named Insured's schedule of values held on file with Alliant Insurance Services, Inc., this sub-limit amount is limited to USD500,000 per Named Insured subject to maximum of USD2,500,000 Per Occurrence, Per Declaration for Business Interruption, Rental Income and Tuition Income combined. Coverage for power generating plants is excluded, unless otherwise specified.<br>USD3,000,000 Tax Revenue Interruption – Per Policy Provisions. However, if specific values for such coverage have not been reported as part of the Named Insured's schedule of values held on file with Alliant Insurance Services, Inc., this sub-limit amount is limited to USD1,000,000 Per Occurrence – Per Policy Provisions. |
| D. | USD35,000,000 | Extra Expense |

14.     Section III of the Policy is called "BUSINESS INTERRUPTION, EXTRA EXPENSE & RENTAL INCOME," and provides coverage for, among other things:

> A. **COVERAGE**
>
> 1. **BUSINESS INTERRUPTION**
>
> Against loss resulting directly from interruption of business, services or **rental value** caused by direct physical loss or damage, as covered by this policy to real and/or personal property insured by this policy, occurring during the term of this policy.
>
> In the event of such loss or damage the insurers shall be liable for the actual loss sustained by the Named Insured for **gross earnings** as defined herein and **rental value** as defined herein resulting from such interruption of business, services, or **rental value**; less all charges and expenses which do not necessarily continue during the **period of restoration**. Due consideration shall be given to the continuation of normal charges and expenses including **ordinary payroll** expenses to the extent necessary to resume operations of the Named Insured with the same quality of service which existed immediately preceding the loss.
>
> **Ordinary payroll** means payroll expenses for the Named Insured's employees EXCEPT: officers, executives, department managers, employees under contract, or additional exemptions such as specific job classes or specific employees. **Ordinary payroll** expenses does include payroll, employee benefits (if directly related to payroll), FICA (employers portion), union dues, and workers' compensation premiums.
>
> With respect to business interruption for power generation facilities, the coverage provided hereunder is sub-limited to <u>USD as per Declaration Page</u>.

15. The Policy's business interruption section covers, among other things, actual loss sustained by the insured for gross earnings or rental value resulting from the interruption of the business.

16. The Policy's BUSINESS INTERRUPTION, EXTRA EXPENSE & RENTAL INCOME section also provides Extensions of Coverage, which makes clear that the business interruption coverage is extended to provide coverage, for among other things, ingress and egress losses:

> B. **EXTENSIONS OF COVERAGE**
>
> 1. **INGRESS / EGRESS**
>
> This policy is extended to insure the actual loss sustained during the period of time not exceeding 30 days, when as a direct result of direct physical loss or damage caused by a covered peril(s) specified by this policy and occurring at property located within a 10 mile radius of covered property, ingress to or egress from the covered property covered by this policy is prevented. Coverage under this extension is subject to a 24-hour waiting period.

17. The Policy's declaration page further makes clear that ingress/egress coverage is part of the business interruption coverage because there is not a separate limit of liability for the coverage.

18. In addition to providing coverage for business interruption during the actual period of interruption, the Policy's extension of coverage section also includes an extended period of indemnity coverage section that extends coverage for all the types of loss covered under the Policy's BUSINESS INTERRUPTION, EXTRA EXPENSE & RENTAL INCOME section, including business interruption losses (gross earnings), rental income, tax interruption losses, tuition income, and extra expense:

> 6. **EXTENDED PERIOD OF INDEMNITY**
>
> Business interruption including rental income, tax interruption, tuition income and **extra expense** coverage provided by this policy is extended for the additional length of time required to restore the business of the Named Insured to the condition that would have existed had no loss occurred commencing on either;
>
> a. the date on which the insurers' liability would otherwise terminate or;
> b. the date on which rebuilding, repairing or replacement of such property as has been lost, damaged or destroyed is actually completed, whichever is later.
>
> The insurers' liability shall terminate no later than 180 (one hundred and eighty) days from the commencement date set forth above, unless a different time period is agreed to by the insurers through an endorsement to this policy.

C. **The Salt Fire**

19. The 2024 Salt Fire (the "**Salt Fire**") was a wildfire in New Mexico beginning on June 17, 2024 near the town of Ruidoso, on the Mescalero Apache Reservation.

20. The Salt Fire damaged more than 500 structures and led to the evacuation of the entire Village of Ruidoso. At the time of the governor's emergency declaration on June 18, 2024, the fires consumed nearly 20,000 acres.



The governor's emergency declaration unlocked additional funding and resources to manage this crisis. As she stated in her declaration:

> The horrific South Fork Fire and Salt Fire have ravaged our lands and property, and forced thousands to flee their homes … We are deploying every available resource to control these wildfires, and to provide support to the Village of Ruidoso, the Mescalero Reservation and surround areas. I extend my deepest appreciation to the courageous firefighters battling these blazes, as well as everyone who has pitched in to help a community in crisis. I urge everyone to heed official orders at all times to stay safe.[1]

21.     Specifically, due to the shutdown of the road allowing access to Plaintiffs' property, Plaintiffs' customers were unable to access the Inn or Travel Center for 22 days, resulting in significant business loss. In addition, due to the lack of access to the Property/ shutdown for an extended period and news related to the fire, Plaintiffs' business continued to be impacted significantly after access was restored on July 9, 2024 (as bookings were not made or cancelled for that time period). This business impact continued through October 2024. The financial records show a clear impact caused by the Salt Fire both during the 22-day period when the road was shut

---

[1] https://www.governor.state.nm.us/2024/06/18/governor-declares-state-of-emergency-in-lincoln-county-and-the-mescalero-apache-reservation-due-to-wildfires/

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                                      Page 6

down and for a period of time after the road access was restored. This resulted in Plaintiffs incurring millions in losses.

22. Thus, Plaintiffs submitted a claim for losses (the "**Claim**") sustained due to damage to property located within a 10-mile radius of the property caused by the Salt Fire, which prevented ingress to or egress from the Location(s). The Claim includes a claim for (a) losses during the 22-day period under the Policy's ingress/egress business interruption coverage and (b) coverage for losses after the 22-day period until business operations returned to their prior levels (for the period of time from July 9, 2024 through October 2024) under the Extended Period of Indemnity ("**EPOI**") Coverage.

**D.    The Coverage Dispute**

23. In response to the Claim, Defendant and its loss adjuster, Crawford Technical Services ("**Crawford**"), incorrectly: (a) measured Plaintiffs' business income loss for the 22-day period (but agreed there was coverage for this period), and (b) denied coverage under the Policy's EPOI Coverage for any period of time after July 9, 2024.

24. As it relates to the 22-day period when the road was shut down, Crawford's analysis contained several errors or omissions, most notably ignoring the year-over-year growth in evaluating the business income loss for the applicable period. The Policy states that, in determining gross earnings, "due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter, had no loss occurred. After Plaintiffs retained lawyers and consultants, Defendant ultimately adjusted its loss payment amount for ingress/egress coverage (for the 22-day period) to over $5 million, but this payment was woefully late and still is understated.

25. As it relates to the period of time from July 9, 2024 to October 31, 2024 in which Plaintiffs' business continued to be impacted by the initial shutdown that occurred due to the Salt

Fire, Defendant denied coverage for this EPOI Coverage claim based on the incorrect position that EPOI coverage does not apply when there is an ingress/egress claim. The amount of loss sustained by Plaintiffs was $6,654,578 for the period of July 9, 2024 through the end of October.

26. Specifically, Defendant has stated that "EPOI expressly applies to only 'business interruption' and 'extra expense coverage;' it does not apply to further extend the extended coverage afforded for Ingress/Egress." This conclusion is not supported by the applicable policy language.

27. Section III of the Policy is called "BUSINESS INTERRUPTION, EXTRA EXPENSE & RENTAL INCOME," which means these are the three coverages provided under this section in the Policy. Likewise, under Ingress/Egress it expressly states that "this policy is extended to insure the actual loss sustained during the period of time not exceeding 30 days." This language makes clear that the Policy's business interruption coverage is extended to include ingress and egress (with similar language for interruption by civil authority coverage). This is further supported by the fact that there is not a separate limit of coverage for ingress/egress.

28. In the EPOI section, it states that business interruption coverage provided by the Policy (which is extended to include actual loss caused by ingress/egress) is extended for the additional length of time required to restore the business of the Named Insured to the condition that would have existed had no loss occurred. Thus, the EPOI applies to ingress/egress. This coverage expressly begins when the insurer's liability would otherwise terminate (i.e., after 30 days). While certain policy forms specifically exclude ingress/egress from the extended period of indemnity, this Policy does not include such a limitation. The Policy therefore provides EPOI coverage for the loss.

29. Despite Plaintiffs' requests for Defendant to reconsider its improper denial, Defendant has failed to comply with the Policy and New Mexico Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim. Defendant and its representatives failed to perform a reasonable and thorough investigation of Plaintiffs' Claim (which is further confirmed by the need to re-calculate the loss for the initial 22-day period multiple times), failed to employ appropriate or qualified consultants to evaluate the damages, and misrepresented applicable scopes of damages as well as the terms of the Policy. Defendant also performed an unreasonable investigation of Plaintiffs' Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' Claim.

30. Because of these violations of law and wrongful conduct, Plaintiffs have sustained and continues to sustain significant actual damages of close to $7 million. Plaintiffs also were forced to retain the professional services of the law firm who is representing Plaintiffs with respect to these causes of action. Plaintiffs also seek damages for attorneys' fees, pre- and post-judgment interest, and bad faith damages (including punitive damages and statutory damages).

31. Despite numerous requests from Plaintiffs, Defendant has refused to accept responsibility for its actions and pay the full amount of the Claim.

## V.  CLAIMS

### COUNT I.
### BREACH OF CONTRACT

32. Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

33. The Policy is a valid, binding and enforceable contract between Plaintiffs and Defendant. Defendant breached the contract by refusing to perform its obligations under the terms

of the Policy and pursuant to New Mexico law. Defendant's breach proximately caused Plaintiffs' injuries and damages.

34.     All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

35.     Defendant's breach proximately caused Plaintiffs' injuries and damages for which Defendant is liable under the Policy (in an amount of close to $7 million) plus costs of this litigation, attorney's fees, interest, and any other damages in an amount to be determined at trial.

## COUNT II.
## INSURANCE BAD FAITH / BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

36.     Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

37.     Defendant is an insurance company that owes its insured, Plaintiffs, a fiduciary duty and an obligation to act in good faith.

38.     Implicit in the contract of insurance between Defendant and Plaintiffs is the covenant that Defendant would, always, act in good faith and deal honestly and fairly with its insured, Plaintiffs. At all times since filing the Claim, Plaintiffs acted honestly and with good faith in its dealings with Defendant.

39.     Defendant breached the implied covenant of good faith and fair dealing in one or more of the following ways, including but not limited to:

a.  Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage. Specifically, Defendant represented to Plaintiffs that the business interruption loss was substantially less than the actual loss. Defendant also misrepresented that there was no EPOI coverage for ingress/egress claims despite the clear language in the Policy;

  b. Not conducting a proper investigation of the Claim before making a determination on Plaintiffs s Claim, including undervaluing the initial 22-day ingress/egress coverage amount, delaying payment, and reaching the conclusion that the loss amount for EPOI claim was not due to the fire (despite not performing any investigation to support that conclusion);

  c. Relying on insufficient and improper information as a basis for its determination on Plaintiffs' Claim (such as not performing any investigation on the loss amount for the July 9, 2024 to October 31, 2024 period even though Defendant concluded there was no loss during this period as one of its reasons for denial);

  d. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' Claim; and

  e. Failing to provide Plaintiffs with a prompt and legitimate reason or explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a Claim.

40. As a direct and proximate result of the bad faith of Defendant, Plaintiffs have suffered damages in an amount to be proven at trial.

41. Defendant's acts and omissions alleged herein, by its breach of the implied covenant of good faith and fair dealing, were done intentionally, willfully, wantonly, recklessly, egregiously, and/or with utter disregard for the rights of Plaintiffs.

42. Accordingly, Plaintiffs are entitled to recover actual damages and punitive damages in an amount to be determined sufficient and to punish Defendant for its misconduct and to deter others from similar conduct in the future.

## COUNT III.
## VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

43.     Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

44.     Defendant is an insurance company that is subject to the provisions of Chapter 59A, Article 16 NMSA 1978.

45.     Defendant's actions as described herein constitute unfair insurance trade practices prohibited by the New Mexico Unfair Insurance Practices Act ("UIPA") NMSA 1978 § 59A-16.

46.     Defendant violated the UIPA in one or more of the following ways by:

a. Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to coverage at issue. Specifically, Defendant represented to Plaintiffs that the business interruption loss was substantially less than the actual loss. Defendant also misrepresented that there was no EPOI coverage for ingress/egress claims despite the clear language in the Policy. As such, Defendant is in violation of § 59A-16-20(A);

b. Failing to acknowledge and act reasonably promptly upon communications with respect to Plaintiffs' Claim. For example, Defendant was forced to re-calculate its loss calculations because its initial analysis for the 22-day period was wrong. As such, Defendant is in violation of § 59A-16-20(B);

c. Failing to affirm coverage of Plaintiffs' Claim within a reasonable time after the proof of loss requests have been completed and submitted by Plaintiffs in violation of § 59A-16-20(D).

d. Not attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiffs Claim in which its liability was become reasonably clear. For example, Defendant knew, or should have known, the loss extended beyond the 22-days, yet it

    intentionally ignored this information and misrepresented the Policy in its denial of Plaintiffs' Claim. Defendant also failed to perform any investigation on the loss amount for the July 9, 2024 to October 31, 2024 period even though Defendant concluded there was no loss during this period as one of its reasons for denial. As such, Defendant is in violation of § 59A-16-2(E).

e. Compelling Plaintiffs to institute litigation to recover amounts due under the Policy. Defendant's acts and omissions throughout the handling of Plaintiffs' Claim, resulting in inadequate coverage of the Claim and breach of the insurance contract between Defendant and Plaintiffs, compelled Plaintiffs to initiate a lawsuit to recover amounts due under the Policy by offering substantially less than the amount covered under the Policy compelled Plaintiffs to institute this lawsuit. As such, Defendant is in violation of § 59A-16-2(G).

f. Failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. As such, Defendant is in violation of § 59A-16-2(N).

47.    Defendant's acts and omissions alleged herein were committed by its employees, representatives, agents, and/or consultants and were ratified or acquiesced to by Defendant.

48.    Defendant's acts and omissions alleged herein in violating the UIPA were done intentionally, willfully, wantonly, recklessly, egregiously, and/or with utter disregard for the rights of Plaintiffs. Accordingly, Plaintiffs are entitled to recover punitive damages and statutory damages in an amount to be determined by the jury and sufficient to punish Defendant for its misconduct and to deter others from similar conduct in the future.

49. As a direct and proximate cause of Defendant's violations of the UIPA, Plaintiffs has suffered actual damages to be determined at trial. Plaintiffs also seeks to recover all damages allowed under the UIPA including their costs and attorney fees pursuant to NMSA 1978 .§ 59A-16-30 and § 39-2-1 (Repl. 2021) as well as extra-contractual damages and punitive damages.

## VI. CONDITIONS PRECEDENT

50. All conditions precedent to suit or payment under the Policy have been satisfied by Plaintiffs, excused or waived by Defendant, or Plaintiffs are excused from performance due to Defendant's prior breach of the policy.

51. Additionally, and/or in the alternative, Defendant has not been prejudiced by Plaintiffs' actions, inactions, or delays, if any. Defendant has always had, and continues to have, full access and ample opportunity to investigate the Claim and determine the actual amount of loss arising from the Salt Fire.

## VII. DEMAND FOR JURY TRIAL

52. Plaintiffs hereby demand a jury trial on all claims listed above and shall pay the required fee.

## VIII. PRAYER

WHEREFORE, Plaintiffs asks that this Court:

    A.    Find Defendant liable for breach of the Policy;

    B.    Find Defendant liable for violations of New Mexico common law bad faith and UIPA;

    C.    Order Defendant to pay all damages to compensate Plaintiffs for all damages sustained due to the breaches of the Policy and bad faith conduct;

    D.    Award Plaintiffs punitive damages and statutory damages under UIPA in an amount to be determined by the trier of fact;

     E.    Award Plaintiffs recovery of attorneys' fees, expert fees, costs, pre-judgment interest, and post-judgment interest; and

     F.    Award Plaintiffs such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of September, 2025.

**JOHN D. WHEELER & ASSOCIATES, P.C.**
A Professional Corporation

*/s/ Elizabeth K. Watson*
Elizabeth K. Watson
John D. Wheeler
Post Office Box 1810
Alamogordo, NM 88311
Telephone: (575) 437-5750
Telecopy: (575) 437-3557
jdw@jdw-law.com
ekw@jdw-law.com

*-and-*

**NADLER LAW, PLLC**

*/s/ Noah H. Nadler*
Noah H. Nadler
State Bar No. 24065806
nnadler@nadlerlegal.com
Whitney L. Warren
State Bar No. 24084395
wwarren@nadlerlegal.com

Telephone: (214) 435-7244
(*Pro Hac Vice to be submitted*)

**ATTORNEYS FOR MESCALERO APACHE TRIBE and INN OF THE MOUNTAIN GODS RESORT & CASINO**